Date signed January 23, 2009



```
                    PAUL MANNES
                U. S. BANKRUPTCY JUDGE
```

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| McCLINTOCK DAIRY, LLC | : | Case No. 07-10077PM |
| | : | Chapter 11 |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  | : | (Jointly Administered) |
| IN RE: | : | |
| | : | |
| McCLINTOCK FAMILY PARTNERSHIP | : | Case No. 07-10079PM |
| | : | Chapter 11 |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

### MEMORANDUM OF DECISION

Before the court are applications for final compensation ("Application(s)") filed by William L. Needler and Associates, Ltd. ("Needler") as attorney for the two Debtors in Possession in these jointly administered cases, McClintock Dairy, LLC ("Dairy") and McClintock Family Partnership ("Partnership").  Both entities are owned by Gary McClintock, Jeffery McClintock and Steve McClintock.  Dairy is, as one might expect, an operating dairy farm.  Partnership owns the land upon which the Dairy operations are conducted.  In Dairy's Application (D.E. #226), for the period October 11, 2007, through October 15, 2008, Needler seeks $11,874.50 in attorney's fees and $1,757.28 in reimbursement of out-of-pocket expenses.  In Partnership's Application (D.E. #233), Needler seeks $5,712.50 in attorney's fees and $1,009.51 in reimbursement of out-of-pocket expenses for the same period.  By Order entered January 10, 2008, this court allowed interim compensation to Needler of $28,750.00 and reimbursement of out-of-pocket expenses of $3,111.84 in Dairy, and interim compensation of $20,000.00 and reimbursement of out-of-pocket expenses of $2,741.20 in Partnership.

Objections to the final applications were filed by the Office of the United States Trustee and by the Debtors.  Needler's Rule 2016(b) Statement reflected payment to him of retainers of $10,750.00 in both cases, together with the filing fees.  Testimony was received at the hearing that since the filing of these cases, Needler received additional payments aggregating $2,350.00.

        Needler was admitted *pro hac vice* on January 22, 2007, for the purpose of general representation of the Debtors in Possession.  Needler filed an Amended Motion for Leave to Withdraw its appearances in both cases on July 23, 2008, that was granted in Dairy on September 29, 2008.  A subsequent order was entered *nunc pro tunc* in Partnership.  Besides ruling on the merits of the objections to compensation, the court must also make its independent analysis of the benefit rendered these estates by Needler's services.  *In re Erewhon, Inc.*, 21 B.R. 79, 86-86 (BC Mass. 1982); *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 841 (CA3 1994)("Beyond possessing the power, we think the bankruptcy court has a *duty* to review fee applications . . . ."); *In re Courtois*, 222 B.R. 491, 494 (B.C. Md. 1998).     At the outset of this opinion, the court will explain why this ruling substantially deviates from its earlier ruling allowing interim compensation to Needler.  In making its earlier award, the court was operating on the facts of the case as known to it at that time.  Now, the court is fully advised in the premises and may review the final fee Applications with the acuity of 20-20 hindsight.

> The purpose of interim compensation is to alleviate economic hardships that would otherwise visit court appointed officers committed to finance extended engagements.  2 Collier on Bankruptcy ¶ 331.01 (15th ed.).  Because interim awards are interlocutory and often require future adjustments, they are " always subject to the court's reexamination and adjustment during the course of the case. . . ."  2 Collier on Bankruptcy ¶ 331.03 (15th ed.) (emphasis added)[.]

*In the Matter of Evangeline Refining Co.*, 890 F.2d 1312, 1321-1322 (CA5 1989) (The law of the case doctrine does not apply to interim fee awards); s*ee also, In re Computer Learning Centers, Inc.*, 407 F.3d 656 (CA4 2005) (They are always subject to reexamination, adjustment and disgorgement); *Specker Motor Sales Co. v. Eisen*, 393 F.3d 659, 662-63 (CA6 2004); *In re Strand*, 375 F.3d 854, 858 (CA9 2004) ("Given the purpose of § 331 and the inherent nature of tentative financial relief, the bankruptcy court did not need to find any misconduct on the part of Leichty to justify modification of the interim award upon final evaluation of the fee application.")

It is the court's opinion, and the court so finds, that Needler abandoned these clients early in this representation. As will be demonstrated in particular with respect to the harvester motion, he caved when opposed and failed to raise available meritable defenses. Needler appears to have been truly uninterested in these cases. When the Debtors finally perceived this fact, they hired replacement counsel, who had to be brought up to speed and duplicated work that Needler may have done. The tragic effect of Needler's nonfeasance is that the Debtors are now searching for funds to pay off the First United National Bank at a time when the financial cupboards are bare.

The court has had the opportunity to observe the principals of the Debtors in Possession throughout this case. They are farm people who appear to have little financial experience and seem totally reliant upon counsel in this situation. At the same time, the court found them to be truth-telling individuals, and credible in all respects. The court believes, without reservation, the testimony of Jodie McClintock that Needler was unresponsive to her calls, hung up on her or cut her off on occasion and was otherwise uncooperative. The court further believes Ms. McClintock's testimony that the land sale that the court will describe later was in place prior to the filing of the bankruptcy cases, and that she did the major work on that aspect of the case, as well as the negotiations with the Farm Service Agency, a federal entity formerly known as Farmers Home Administration. The court finds further that the cow lease with Phil Ferrick promoted by Needler was a financial undertaking that made no sense whatsoever and was apparent to the Debtors' principals.

Dairy's secured creditors consisted primarily of (1.) First National Equipment Financing, Inc., the holder of a claim in the sum of $29,865.56 secured by a harvester; (2.) Farm Service Agency, holding a claim in the sum of $104,235.00 secured by equipment; and (3.) First United Bank and Trust ("First United Bank"), with claims aggregating $1,800,000.00 secured by Dairy's receivables, equipment, livestock, harvested crops, and leasehold. Unsecured claims were filed in the sum of $267,588.70. Partnership's sole obligation was as guarantor of the obligations to First United Bank, aggregating $1,815,211.62. While the United States Trustee appointed a Committee of Unsecured Creditors consisting of one creditor, that Committee has never been heard from, aside from filing a notice of the change of its address. The primary creditor participant in the case was the First United Bank, with whom a cash collateral agreement was worked out. A minor supporting role was played by the Farm Service Agency.

With respect to First National Equipment Financing, Inc.'s claim of $29,865.56, Needler filed a motion to approve a Stipulation with that entity that provided for payment of that

creditor's claim in full with interest at 7.8%.  What the court did not appreciate was the fact that at the time it approved the Stipulation submitted by Needler, the action filed by First National Equipment Financing, Inc. in the County Court of Douglas County, Nebraska, was filed in violation of the automatic stay of § 362(a) of the Bankruptcy Code.  In the hearing, Needler took great pride in settling the claim – a settlement that disposed of a lawsuit filed by that entity in violation of the automatic stay for the full amount of the claim without any compensation to the estate on account of the intentional violation of the automatic stay.  Inasmuch as the creditor valued the collateral at $120,000.00, were an action for relief from stay filed by the creditor, most surely, because of the "massive equity cushion," Dairy could have husbanded its sorely needed cash rather than make payments on this obligation prior to the time that cash was available.  What is particularly disturbing to the court is that it had all the facts before it, with the proof of claim filed in March 7, 2007, to refuse to approve this Settlement that provided utterly no benefit whatsoever to the estate.  Under such circumstances, similar violations of the automatic stay have resulted in the award of compensatory and punitive damages as well as attorney fees to a debtor.  *Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289 (CA4 1986).  Here Needler seeks compensation for caving to an improper demand.

     Before dealing with the final Applications for compensation, the court will deal particularly with the requested compensation for the period from October 11, 2007, through October 15, 2008, the present fee Applications.  On October 16, 2007, Needler filed a Motion to Continue the hearings on interim fee applications in these the jointly administered cases asserting that good progress had been made towards an "Amended Consensual Plan and Disclosure Statement."  The motion for continuance was denied the day that it was filed.  Also on October 16, 2007, the court entered its order regarding the sale of certain acreage.  The uncontradicted testimony is that the bulk of the work in facilitating that sale was accomplished by the attorney for First United Bank.  On November 15, 2007, Needler filed a motion for approval of a Stipulation acceding to the requests for relief from the automatic stay of the Farm Service Agency and providing for periodic payments to that creditor.  From that point on, nothing of substance is shown in the record other than the filing of bank statements and, on July 13, 2008, the initial motions to withdraw from representation of the Debtors.  The only significant item filed by Needler (D.E. #231) was for the purpose to "correct the record" that the fault in the failure of the Debtors to file monthly reports was the Debtors' principals and not his and that they had intentionally refused to answer questions.  The court finds this assertion false

in all respects.  The court finds minimal value to this estate in the work done by Needler in the period October 11, 2007, through October 15, 2008.

The court will now review the Final Applications in accordance with the criteria for reviewing applications for compensation by attorneys in bankruptcy cases under the standards set forth in the cases of *Barber v. Kimbrell's, Inc.,* 577 F2d. 216 (CA4 1978) and *Harman v. Levin*, 772 F.2d 1150 (CA4 1985), that adopted the criteria originally set forth in the case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (CA5 1974).  *See*, Local Bankruptcy Rule 2016-1(a) and Appendix D to the Local Rules.

1. <u>The time and labor required</u>  -  The court now seriously disputes the time said to be spent on these cases as stated by Needler.  Be that as it may, if the time shown actually was spent, it was to no avail.

2. <u>The novelty and difficulty of the questions raised</u>  -  This case presented a simple farm reorganization.  There was a cash collateral agreement with First United Bank, an institution that did not appear to be at war with the Debtors.  First United Bank's counsel is known to the court as a reasonable attorney who is not a person to waste time or needlessly prolong litigation.  Nothing has been heard from the unsecured creditors.  All that the United States Trustee has sought is the normal compliance with the rules for handling cases under Chapter 11.  The attorney for the Farm Service Agency is similarly known to the court as a reasonable lawyer not likely to create needless effort for debtors.

3. <u>The skill requisite to properly perform the legal service </u>  -  As stated previously, this is as simple a case under Chapter 11 as one could imagine.  An understanding of the problems peculiar to farmers would be helpful in managing the case, inasmuch as there is a considerable delay between farm expense and realization of income.

4. <u>The preclusion of other employment by the attorney due to acceptance of the case</u>  -  This has no application.

5. <u>The customary fee</u>  -  Cases under Chapter 11 are normally handled on an hourly basis.  The hourly fee ranges from $200.00 to over $900.00, depending upon the size of the case and the experience of the attorney.

6. <u>Whether the fee is fixed or contingent</u>  -  Fees in cases under Chapter 11 are only contingent in the respect that must be allowed by the court.

7. <u>Time limitations imposed by the client or the circumstances</u>  -  With the exception of the cash collateral issue that required action early on in the case, there does not appear to be any

time limitations imposed. However, because of the deplorable economic circumstances presently existing, it would have been to the Debtors' advantage to obtain replacement financing forthwith upon the filing of these cases. Needler's delay may well serve to lead ultimately to liquidation of these estates.

       8. <u>The amount involved and the results obtained</u> - This factor is by far the most important factor to consider in determining the amount of any fee award. Aside from the negotiation of the cash collateral agreement that was said to have taken an unbelievable 85 hours, this case is no farther along than it was at the time of the filing. Indeed, it is perhaps in far worse shape in that the general financial condition has deteriorated so that other sources of funding are unavailable. And, as testified by Ms. McClintock, Partnership sold off a portion of the real estate at perhaps 1/3 to 1/4 of its value. The agreement with the equipment leasing company is a prime example of the worthlessness of these services. Dairy's agreement with Farm Service Agency (D.E. #162) provided for the curing of deficiencies but also provided that any default with First United Bank allowed Farm Service Agency to pursue all available remedies allowed to foreclose upon its collateral.

       9. <u>The experience, reputation, and ability of the attorney</u> - As stated in a previous Memorandum, Needler has appeared in a large number of agricultural cases in the Bankruptcy Courts. A large number were unsuccessful. It is the court's view of the ability of counsel that were he to present himself to this court again for admission *pro hac vice* that application would be denied.

      10. <u>The "undesirability" of the case</u> - Based on the court's observation of these clients, they appear to be very desirable people to represent and to work with. The court finds nothing in the case the least undesirable.

      11. <u>The nature and length of the professional relationship with the client</u> - This was the only contact between these Debtors and Needler.

      12. <u>Awards in similar cases</u> - In cases such as this, the court has allowed compensation from zero to one hundred percent of the amount sought and, in some exceptional cases, has allowed enhanced compensation as allowed by such cases as *Blum v. Stenson*, 465 U.S. 886 (1984).

     After consideration of all the relevant factors, and the court being firmly of the belief that little if any benefit was rendered these Debtors, the court will allow Needler total final compensation $8,850.00 for each case, together with reimbursement of all out-of-pocket

expenses as constrained by the amount allowed for reimbursement for photocopy and facsimile charges contained in Appendix D to the Local Bankruptcy Rules of this court.[1]  In making this ruling, the court notes the out-of-pocket expenses allowed in the interim compensation Order for payment of the filing fees were paid in advance to Needler.

An appropriate order will be entered.

cc:    McClintock Dairy LLC
       1300 Pigs Ear Road
       Grantsville, MD 21536

       McClintock Family Partnership
       1300 Pigs Ear Road
       Grantsville, MD 21536

       Donald Scott Goldbloom
       12590 National Pike
       Grantsville, MD 21536

       James Michael Baggett
       McCann Garland Ridall & Burke
       11 Stanwix Street
       Suite 700
       Pittsburgh, PA 15222

       Jayci Shaw Duncan
       100 S. Liberty Street
       P.O. Box 360
       Cumberland, MD 21501-0360

---

[1] As pointed out in the objection to compensation filed by the United States Trustee (Dairy #243 p. 3), Needler's final Applications, unlike the interim Applications sought reimbursement for facsimile use and photocopying of $2.00 and $ .25 a page, respectively.  This is in excess of the rates allowed under the Compensation Guidelines of this court of $1.25 and $.20 a page, respectively.  Appropriate adjustments will be made.

William Lowell Needler
555 Skokie Blvd
Suite 500
Northbrook, IL 60062

U.S. Trustee
6305 Ivy Lane
Suite 600
Greenbelt, MD 20770

Creditor Committee
Graham Diary Supply Inc.
1581 Business Route 66
Greensburg, PA 15601

Larry D. Adams
Assistant U. S. Attorney
United States Attorneys Office
36 South Charles Street, 4th Floor
Baltimore, MD 21201

Roger Schlossberg
134 West Washington Street
P.O. Box 4227
Hagerstown, MD 21741-4227

Gross & Welch
Sheryl Lohaus
1500 Omaha Tower
2120 S. 72nd Street
Omaha, NE 68124-2342

All parties requesting notice

**End of Memorandum**